IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>JOHN DOE subscriber assigned IP Address 108.228.12.17,<br><br>  Defendant. | No. C 16-05975 WHA<br><br>**ORDER TO SHOW CAUSE** |

In October 2016, plaintiff Malibu Media, LLC, filed fifty-seven copyright infringement actions, each against a different John Doe defendant identified only by his or her IP address. Each of these actions accused the respective defendant of violating Malibu Media's copyrights using BitTorrent, a file-transfer protocol often used for piracy, to copy and distribute pornographic videos produced by Malibu Media and offered on its website.

The fifty-seven actions filed in October 2016 constituted the fourth wave in a monsoon of two-hundred thirty-five actions that Malibu Media has filed in this district in the past eighteen months. In September 2015, Chief Judge Phyllis Hamilton ordered all Malibu Media copyright infringement actions to be assigned to the undersigned judge going forward from that date.

By virtue of Malibu Media's methodology for detecting piracy via BitTorrent, it could not identify the alleged infringer by name. Rather, it could only learn the alleged infringer's IP address, which is a numerical identifier assigned by an Internet service provider to a given

Internet access point.  Accordingly, Malibu Media generally sought leave to conduct early discovery in order to discern the alleged infringer's true identity, specifically by serving third-party subpoenas on the Internet service provider that Malibu Media believed assigned the accused IP address.

Since IP addresses are not assigned geographically, Malibu Media needed to use geolocation technology that mapped each accused IP address to a region in order to determine that jurisdiction and venue were proper before filing a lawsuit.  (Malibu Media's litigation campaign pervades the federal courts throughout the nation, not just this district.)

In this particular case, as in each case filed in this district in October 2016, counsel for Malibu Media averred in a sworn declaration that Malibu Media used a database called "Maxmind" to map our defendant's IP address to a particular district in order to determine the proper venue for this action (Dkt. No. 7-6).  The declaration parroted several hearsay statements about the accuracy of Maxmind from its website, but counsel also averred that in their experience in California "Maxmind has always been 100% accurate to the state level, 100% accurate at identifying the ISP and has predicted the correct district 146 out of 147 times" (*id.* ¶ 15).

In each of those actions, an order denied Malibu Media's request to serve a third-party subpoena because counsel's representations about their personal experience with Maxmind failed to account for dozens of cases filed in this district and the hearsay from Maxmind's website could not be considered (Dkt. No. 8).  Malibu Media filed subsequent motions accounting for every case filed in this district (many of which were dismissed before Malibu Media learned the defendant's identity), and an order allowed Malibu Media to serve third-party subpoenas based on the more complete record.

Malibu Media has now received responses from each defendant's Internet providers, and it has voluntarily dismissed without prejudice thirty-five of the fifty-seven actions filed in October 2016.  No explanation for the voluntary dismissal has been given.

As Judge Otis Wright stated in *Malibu Media, LLC v. John Does 1 through 10*, 12-3632, 2012 WL 53832304, at *3–4 (C.D. Cal. June 27, 2012):

> The Court is familiar with lawsuits like this one. These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.
>
> The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement — making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it.

Although Malibu Media now files individual cases against each defendant in this district (rather than one mass lawsuit), its practices evidently remain the same as those Judge Wright described.

Indeed, the undersigned judge has previously characterized the typical allegations in Malibu Media's complaint as follows:

> To be clear, this order only holds that Malibu Media has met the low standard of plausibility. Evidence that a defendant copied or distributed only a single piece of a video is weak evidence that the defendant copied the whole file (especially given the complexity of the circumstances of Malibu Media's collection of that evidence). Registration of a video with the Copyright Office is only prima facie evidence of the copyrightability of that work. Moreover, the mere fact that an individual is the subscriber for a particular IP address is weak evidence that he, rather than a third party, actually committed the alleged infringement even if the alleged infringement occurred habitually. Malibu Media faces significant hurdles when it comes to proving its case on the merits, but it has met its burden at the Rule 12 stage.

*In re Malibu Media Copy. Infringement Litig.*, No. 15-04170, 2016 WL 926906, at *4 (N.D. Cal. Mar. 11, 2016).

Malibu Media's voluntary dismissal without prejudice of groups of its cases is not a new pattern. A sizable portion of the cases from previous waves were terminated in the same way. The practice has just become more frequent, and it follows skepticism by the undersigned judge and others around the country about the accuracy of the Maxmind database. *See Malibu Media,*

*LLC v. Doe*, No. 16-01006, 2016 WL 3383830, at *3 (N.D. Cal. June 20, 2016) (collecting cases); *cf.* Kashmir Hill, *How an Internet Mapping Glitch Turned a Random Kansas Farm into a Digital Hell*, Fusion (Apr. 10, 2016, 10:00 A.M.), http://fusion.kinja.com/how-an-internet-mapping-glitch-turned-a-random-kansas-f-1793856052, (reporting a glitch in Maxmind's database that mapped more than six hundred million IP addresses to a single farm in Kansas).

Malibu Media now moves to continue the case management conference in this action, which is currently set for May 18 at 11:00 a.m. because it only received defendant's identifying information on April 23, and has not yet had time to serve the summons and complaint, the deadline for which is May 28.

That request is **DENIED**. Instead, Malibu Media is hereby ordered to **SHOW CAUSE** at that hearing, why the Court should not bar further Malibu Media cases in this district until the accuracy of the geolocation technology is fully vetted. Malibu Media shall file a written statement, with all factual assertions supported by declarations sworn under the penalty of perjury by **MAY 16 AT NOON**.

To be clear, this order applies even if Malibu Media voluntarily dismisses this action.

**IT IS SO ORDERED.**

Dated: May 10, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE